# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARTURO MASSO, | ) | |
| Plaintiff, | ) | Case No: 1:14-cv-04250 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [25] is granted. Civil case terminated.

## STATEMENT

Arturo Masso ("Plaintiff") brings this action under 42 U.S.C. § 405(g) to seek review of a final decision by the Commissioner of Social Security ("Defendant"). (Compl., Dkt. # 1.) Specifically, Plaintiff asks the Court to set aside the April 3, 2013 decision by an Administrative Law Judge ("ALJ") denying Plaintiff's application for disability benefits. This matter is before the Court on Defendant's Motion for Summary Judgment filed February 12, 2015. (Mot. Summ. J., Dkt. # 25.) For the reasons that follow, the Court grants the motion for summary judgment and affirms the decision of the ALJ.

## Factual Background

On July 23, 2008, Plaintiff reported to the emergency room at Alexian Brothers Medical Center stating that he felt pain in his right lower back after lifting an industrial printer in the

course of his work as a delivery driver. (AR at 266-68.[1]) After diagnosing Plaintiff with lumbar spine trauma, the emergency department prescribed him ibuprofen and robaxin and discharged him with instructions to seek follow-up care if his pain did not improve after one week. (*Id*. at 269-73.) According to Plaintiff, he was sent back to work with doctor's restrictions after one day off, but these restrictions were not followed and Plaintiff was only able to tolerate his normal work for one week before seeking further medical attention. (*Id*. at 354.) Plaintiff complained at his follow-up visit that the pain and weakness on the right side of his body were worsening, and that the muscle relaxants made him drowsy. (*Id*. at 700.) An August 6, 2008 MRI revealed disc disease at the L4-5 spinal region with a broad-based central/left paracentral herniation causing left lateral recess stenosis, as well as mild neural foraminal and central canal narrowing. (*Id*. at 249.) Further neurological testing in October 2008 found electrophysiologic evidence of ongoing denervation in Plaintiff's lower right lumbar paraspinal muscles. (*Id*. at 647-48.)

In September of 2008 Plaintiff began pain management treatment with Dr. Suda Spirtovic, who recommended and administered physical therapy, epidural injections, and the drugs Neurontin and Norco. (*Id*. at 685, 693, 697.) These treatments reduced Plaintiff's radicular pain, though his lower back pain persisted. (*Id*. at 687-88.) Testing in late 2008 indicated that Plaintiff had difficulty moving from sitting to supine positions, but performed normally on leg-raising tests and had full range of motion in his lumbar spine. (*Id*. at 661, 663.) In order to treat his persistent back pain, Plaintiff attended physical therapy appointments roughly three times per week from shortly after his injury until September 28, 2009 (except for a period of non-attendance due to shingles). At these visits, Plaintiff generally reported subjective pain levels of between 4 and 6 on a scale of 10, and also complained of weakness, numbing sensations,

---

[1] For convenience, the Court cites to material in the certified administrative record using the format "AR at #." All such material is available as Document # 9 on the docket.

tingling, and decreased spinal range of motion. (*See generally id*. at 281-399, 414, 438, 559-640.) Clinical findings also indicated antalgic, limping, guarding, or abnormal gait, as well as decreased abdominal muscle strength. (*See, e.g., id*. at 356-58, 410, 414.) In addition to physical therapy and medication, Plaintiff also underwent other treatment and diagnostic procedures including a discogram, a CT scan, and various injections. (*Id*. at 400, 442-43, 774). A functional capacity evaluation on March 24, 2009 determined that while Plaintiff had the physical capability to perform work at the "Sedentary" physical demand level as established in Department of Labor regulations, he continued to demonstrate decreased lumbar range of motion as well as functional deficits with repetitive stooping, squatting, climbing, walking, sitting, and push/pull tolerances. (*Id*. at 354-59.)

In the summer of 2009, Plaintiff began treatment with Dr. Giri Gireesan. Dr. Gireesan concluded that roughly a year of physical therapy and three epidural injections had failed to resolve Plaintiff's lumbar pain, and recommended a single-level interbody fusion surgery. (*Id*. at 775.) On October 15, 2009, Plaintiff underwent fusion surgery of the L4 and L5 segments of his lumbar spine. (*Id*. at 753-68.) By March 24, 2010, Plaintiff was attending physical therapy and taking Norco as needed for continued back pain but "did not have any specific complaints." (*Id*. at 739.) Clinical examinations continued to show decreased lumbar range of motion, as well as abnormal ambulation and decreased hip and abdominal muscle strength. (*See, e.g*., *id*. at 715, 724, 745, 841.) At his physical therapy appointments, Plaintiff also sometimes complained of muscle spasms. (*Id*. at 879.)

Plaintiff completed physical therapy in April 2010, and Dr. Gireesan prescribed a work conditioning program. (*Id*. at 734-35.) The work conditioning evaluator noted that Plaintiff's participation needed improvement and that his progress was hindered by multiple absences. (*Id*.

at 701, 912.) Although the work conditioning progress evaluations noted that Plaintiff had difficulty changing positions and reported some pain when bending and crouching, they found that Plaintiff's strength had increased to the point that he was capable of work at the "Light" or "Light/Medium" physical demand level. (*Id*. at 701, 912.) Upon completing the work conditioning program, Plaintiff was "capable of frequently lifting 19 lbs from desk to chair, 21 lbs above shoulders, and occasionally 30 lbs" and was identified as a candidate for light work training. (*Id*. at 731.) On October 13, 2010, Dr. Gireesan certified that the surgery had successfully achieved solid fusion and directed Plaintiff to wean himself off pain medication. (*Id*. at 725.) At Plaintiff's final appointment with him on April 11, 2011, Dr. Gireesan found that Plaintiff had reached "maximum medical improvement from a clinical basis" and had "significant relief of pain" from the successful fusion surgery, and was therefore a candidate for light work. (*Id*. at 716.)

On June 15, 2011, Plaintiff attended a consultative examination by Dr. Rochelle Hawkins in connection with a disability claim he had recently filed. Dr. Hawkins reported that Plaintiff complained of back pain on the 9 out of 10 level every day or every other day, and was using Vicodin and Tramadol for pain. (*Id*. at 916.) He exhibited full strength and range of motion in both his arms and legs, and reported that he was able to take his kids to school and help his wife with light cooking and cleaning. (*Id*. at 916-18.) Plaintiff was able to walk more than 50 feet without a cane and had a slight antalgic gait. (*Id*. at 918.) With regard to Plaintiff's spine, Dr. Hawkins found that Plaintiff's back had "minimal tenderness" to palpitation, no spasms, and no anatomic abnormality, but he exhibited limited range of motion in his lumbar spine consisting of 50/60 true lumbar spine flexion, 80/90 lumbar spine flexion with hip flexion, 15/25 lumbar spine extension, and 15/25 lateral bending on both sides. (*Id*.) Plaintiff also showed mild difficulty in

tandem walking, squatting, and arising, and moderate difficulty in walking on his toes or heels and moderate difficulty hopping on one leg. (*Id*.) Dr. Hawkins concluded that Plaintiff "has some difficulty in prolonged standing, walking, lifting, and carrying due to obesity and chronic back pain" but found him able to sit without difficulty and walk more than fifty feet without assistance. (*Id*. at 919.)

Plaintiff underwent another consultative examination for the Bureau of Disability Determination Services on November 17, 2011. Dr. Charles Carlton reported that Plaintiff was able to rise from a sitting to a standing position without assistance and was able to walk without an assistive device, but complained of lower back pain while walking and had decreased range of motion in his lumbar spine. (*Id*. at 990-91.) Motor strength, sensation, reflexes, and range of motion in all other joints were normal. (*Id*. at 991-95.) Dr. Carlton concluded that a "conservative estimate of [Plaintiff's] functional ability" included the ability to sit and stand, walk more than 50 feet without an assistive device, handle objects using both hands, and lift up to 20 pounds. (*Id*. at 992.)

The record reflects no further treatment notes until June 2012, at which point Plaintiff began seeing Dr. Estefan Roy for treatment of his back pain. In September 2012, Dr. Roy completed a Physical Functional Capacity Questionnaire in which he noted that Plaintiff complained of drowsiness, dizziness, and nausea as side effects of his medication. (*Id*. at 1033.) Dr. Roy found that Plaintiff could walk only half a block without rest or severe pain, could sit or stand only 10-15 minutes at a time without getting up, would require 1.5 minute breaks roughly every 15 minutes during a workday, and could never lift and carry any amount of weight, turn his head or hold it in a static position, or twist, stoop, crouch, or climb. (*Id*. at 1034-35.) In

addition, Dr. Roy found significant limitations in Plaintiff's ability to use his arms, hands, and fingers, and diagnosed Plaintiff with depression. (*Id*. at 1033, 1036.)

## **Procedural Background**

Plaintiff filed his first application for disability benefits on July 8, 2009, and the agency denied this application on October 27, 2009. (*Id*. at 53.) Plaintiff did not seek review of this application. He filed his second, current application on November 16, 2010, and his medical records were reviewed by agency medical consultant Dr. Richard Bilinsky on July 1, 2011 and used to complete a Physical Residual Functional Capacity Assessment. (*Id*. at 934.) This assessment noted Plaintiff's complaints of pain and the "slight" decrease in his lumbar range of motion, and determined that Plaintiff was "partially credible" based on the disconnect between Plaintiff's claimed walking difficulties and Dr. Hawkins' findings that Plaintiff could walk 50 feet without a cane and had only a slight antalgic gait. (*Id*. at 936, 939.) Dr. Bilinsky noted full agreement with Dr. Hawkins' findings. (*Id*. at 940.) He concluded that Plaintiff had the residual functional capacity ("RFC") to do work that involved sitting or standing for six hours per workday with no limitations on operating hand or foot controls, and was able to do frequent crouching and occasional climbing or stooping. (*Id*. at 933-36, 940.)

Plaintiff's application was denied on July 5, 2011, and he moved for reconsideration. Dr. Young-Ja Kim performed a second agency medical consultation on December 12, 2011 in connection with the reconsideration of Plaintiff's application. Dr. Kim reviewed and affirmed Dr. Bilinsky's previous RFC determination, noting Dr. Hawkins' finding that Plaintiff had some difficulty in prolonged standing, walking, lifting, and carrying. (*Id*. at 1010.) In accordance with

Dr. Kim's conclusions, Plaintiff's application was denied on reconsideration on December 16, 2011. (*Id*. at 46-49.)

Plaintiff appealed this denial and a hearing was held before the ALJ on January 8, 2013. At this hearing, Plaintiff testified that he drove his wife to the store or laundromat about once a week and drove his daughter to school every day when able, and that he was the only one in the family who drives. (*Id*. at 14, 19.) He was typically unable to sleep through the night, and could not help his wife with laundry, dishes, or making the bed because these required standing or bending. (*Id*. at 27-28.) When asked whether he could do a sitting job, Plaintiff initially responded that it would depend on the job, but after further questioning explained that he could only sit or stand for 10 to 15 minutes at a time. (*Id*. at 17- 18.) He explained that the long gap in his medical treatment between Dr. Gireesan and Dr. Roy was because Workman's Compensation stopped paying for his treatment for several months. (*Id*. at 20-21.) Plaintiff testified that he suffered constant, sharp pain in his back, hips, feet, and heels, and that the spinal fusion surgery did not decrease the pain. (*Id*. at 23-25.) He estimated that the longest he could endure any activity is 10-15 minutes at a time, and testified that he had difficulty concentrating long enough to help his children with homework. (*Id*. at 29, 32.)

The ALJ issued a written decision on April 3, 2013, finding that Plaintiff had severe impairments including lumbar disc herniation and obesity but denying benefits because Plaintiff was capable of performing light work with the limitation that he only have to stoop and climb occasionally. (*Id*. at 53-66.) He noted that he gave substantial weight to the consultative exam reports by Drs. Hawkins and Carlton as well as the findings of the two agency medical consultants, and explained why he assigned "very little weight" to Dr. Roy's opinions concerning Plaintiff's RFC. (*Id*. at 63-64.) With regard to Plaintiff's testimony about his pain and

limitations, the ALJ found Plaintiff's subjective complaints "not entirely credible" because these complaints were not fully supported by the medical evidence. (*Id*. at 61.) The Appeals Council denied review of the ALJ's decision on December 5, 2013, leaving it as the final decision of the Commissioner. (*Id*. at 1-5.) Plaintiff now seeks review of the ALJ's decision by this Court.

## Standard of Review and Applicable Law

Plaintiff asks the Court to overturn the ALJ's decision pursuant to 42 U.S.C. § 405, which provides in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C.A. § 405(g). Under this statute, a district court reviews an ALJ's decision to determine whether it is supported by "substantial evidence" and is free of legal errors. *See id*. ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Micus v. Bowen*, 979 F.2d 602, 604 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The reviewing court "reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (citations omitted). While the ALJ's factual findings are therefore afforded deference, his or her determinations regarding the relevant law are reviewed de novo. *See Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). "A reversal and remand may be required . . . if the ALJ committed an error of law or if

the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). Reversal is mandatory if the ALJ has committed a legal error, regardless of how much evidence supports his or her determination. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

Under the *Chenery* doctrine, a reviewing court may not affirm an administrative agency's decision "on grounds other than those stated by the agency." *Mem'l Hosp. of Carbondale v. Heckler*, 760 F.2d 771, 778 (7th Cir. 1985) (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)). Accordingly, the Court must assess only the ALJ's stated reason for reaching his conclusions and cannot uphold his decision based on other evidence in the record that the ALJ could have – but did not – discuss. *See Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013). The ALJ's reasoning must be sufficiently detailed to build a "logical bridge" from the evidence in the record to the ALJ's conclusions. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (holding that affirmance of an ALJ's decision is not permissible if, "while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result"). The court may not uphold an ALJ's decision where this bridge is undermined by "contradictions or missing premises." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

A claimant who was insured during the period when his or her condition manifested qualifies for benefits if he or she is "disabled" within the meaning of the 42 U.S.C.A. § 423(d). *See Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). That statute defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. §

423(d)(1)(A). Under agency regulations, whether the claimant satisfies this definition of disability is determined using a five-step analysis: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disability impairment, whether he or she can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing Reg. § 404.1520).

In this case, the ALJ determined that: (1) Plaintiff is not currently employed; (2) Plaintiff's back injury and obesity constitute a severe impairment; (3) none of Plaintiff's impairments alone or in combination equals the severity of a "listed" impairment considered conclusively disabling; and (4) Plaintiff is unable to perform his past relevant work as a delivery driver. The ALJ therefore proceeded to step five and determined Plaintiff's RFC, concluding that despite Plaintiff's impairments he remained capable of "light work" with some limitations on stooping and climbing. The parties do not disagree with the ALJ's findings on the first four steps, and the dispute before the Court therefore centers only on whether the ALJ properly determined Plaintiff's RFC.

## Discussion

Plaintiff identifies four specific errors that he contends justify vacating the ALJ's decision and remanding: (1) the ALJ assessed only whether Plaintiff was disabled at the hearing date and failed to assess whether a disability existed for a 12-month period between Plaintiff's injury and fusion surgery; (2) the ALJ purported to give substantial weight to Dr. Hawkins' report yet failed to explain why he did not factor Dr. Hawkins' findings regarding Plaintiff's limitations into his RFC determination; (3) the ALJ made various errors in finding Plaintiff not

credible; and (4) the ALJ failed to adequately take into account limitations in Plaintiff's lumbar range of motion. (Pl.'s Br. Supp. Reversal, Dkt. # 17.) The Court examines each of Plaintiff's grounds in turn, and concludes that none justify overturning the ALJ's denial of benefits.

*Failure to assess the period between injury and surgery*

Plaintiff's first contention is that the ALJ erred by only evaluating Plaintiff's medical limitations post-surgery, rather than examining the records of Plaintiff's condition between his July 2008 injury and October 2009 fusion surgery. (*Id*. at 6-7.) A claimant need not be disabled at the date of his or her hearing, as he or she qualifies for benefits if a disability existed for *any* consecutive 12-month period. *See* 20 C.F.R. § 404.320(b)(3); *Brown v. Massanari*, 167 F. Supp. 2d 1015, 1017 (N.D. Ill. 2001). An ALJ's failure to consider a claimant's limitations during the entire period between onset and hearing justifies reversal. *See Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013) (remanding where it was "painfully apparent…that the ALJ focused entirely on the asserted absence of a disability *as of the date of the Hearing,* based in substantial part on extremely recent evidence") (emphasis in original).

In Plaintiff's case, the ALJ limited his discussion to the medical records produced between Plaintiff's fusion surgery and the hearing date. Such a limitation was proper, however, in light of Plaintiff's prior unsuccessful disability application covering the former period. Under agency regulations, the Commissioner may only reopen a final determination on eligibility for benefits if "good cause" exists for having missed the deadline to seek review of the determination. *See* 20 C.F.R. §§ 404.988, 416.1488. "Good cause" exists where a claimant can provide "new and material" evidence, a "clerical error" exists, or the evidence previously considered in making the decision shows that the agency made an "error." 20 C.F.R. §§

404.989(a), 416.1489(a). On the first page of his written opinion, the ALJ noted that Plaintiff's prior application for benefits was denied in the same month as his surgery, and stated that "[n]o new and material evidence is present that would permit disturbing the earlier state agency determination." (AR at 53.) He also stated that he had considered Social Security Ruling 91-5p, 1991 WL 208067 – which clarifies the standard the agency applies to "good cause" for escaping res judicata based on a claimant's failure to appeal the agency's determination – and determined it did not apply. (*Id.*)

Plaintiff concedes in response to the summary judgment motion that the ALJ declined to reopen the previous denial of benefits and that res judicata thus barred reevaluation of Plaintiff's impairments prior to October 2009, but argues that the evidence of impairment during that period was "properly re-introduced as the precipitating events relevant to Plaintiff's ongoing pain and other symptoms." (Pl.'s Resp., Dkt. # 32, at 2.) Plaintiff's argument on this point is opaque, but he seems to suggest that he should have been permitted to offer evidence of impairment prior to the fusion surgery. This is correct but irrelevant, as he was not barred from offering such evidence. The ALJ properly declined to consider whether Plaintiff was disabled prior to October 2009, because Plaintiff had already applied for and been denied benefits for that period and had failed to seek review of the denial within the relevant time limits. But the ALJ did not refuse to review and consider the medical evidence for the period at issue; he discussed at length the clinical findings made prior to Plaintiff's fusion surgery. (AR at 59-60.) Accordingly, the ALJ's refusal to consider whether Plaintiff was disabled during any 12-month period prior to October 2009 was proper.

*Failure to credit Dr. Hawkins' limitations assessment*

The second ground Plaintiff offers for overturning the ALJ's decision is that the ALJ failed to articulate any reason for ignoring portions of Dr. Hawkins' findings despite purporting to give her report substantial weight. (Pl.'s Br. Supp. Reversal, Dkt. # 17, at 9.) Specifically, Plaintiff points to Dr. Hawkins' finding that Plaintiff had mild difficulty tandem walking, squatting, and arising, moderate difficulty walking on his toes, heels, and hopping on one leg, and some difficulty with prolonged standing, walking, lifting, and carrying. According to Plaintiff, the ALJ's determination that Plaintiff was capable of light work with only occasional stooping and climbing fails to include all of the limitations Dr. Hawkins described, and is therefore inconsistent with the ALJ's statement that he accorded Dr. Hawkins' opinion substantial weight. In general, an ALJ may not selectively consider medical reports, especially those of treating physicians, but must instead consider "all relevant evidence." *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Accordingly, if the ALJ accepts some portions of a medical opinion while rejecting others, he or she must acknowledge the portions that run contrary to the ALJ's conclusion and explain the basis for such selectivity. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Plaintiff's argument is unavailing, however, because it assumes a contradiction that does not exist. An ALJ's duty to explain his reasoning for rejecting portions of an examiner's report only becomes relevant if the ALJ actually rejects any of the examiner's findings, and the ALJ's conclusion is not inconsistent with Dr. Hawkins' conclusion such that he must necessarily have rejected some of her findings. To begin with, the ALJ accurately summarized the results of Dr. Hawkins' examination, including that Plaintiff exhibited a slightly antalgic gait, had reduced range of motion in his lumbar spine, had mild difficulty with tandem walking and squatting, and had moderate difficulty walking on heels or toes and hopping on one leg. (AR at 61.) He further

noted Dr. Hawkins' conclusion that Plaintiff "has some difficulty in prolonged walking, lifting, and carrying." (*Id*. at 64.) The ALJ went on to note that Dr. Hawkins' findings were consistent with Dr. Carlton's consultative exam and the findings of the work hardening program evaluators, and accorded Dr. Hawkins' conclusions substantial weight for that reason.

Far from representing a rejection of Dr. Hawkins' findings, the ALJ's decision simply demonstrates that he considered those findings to be consistent with an RFC allowing for light work. The ALJ made this point explicitly, stating that the non-examining state agency medical consultants' recommendation of a light work RFC was consistent with Dr. Hawkins' findings. (*Id*. at 64.) The agency medical consultants made note of Dr. Hawkins' finding that Plaintiff had "some difficulty" in prolonged standing and walking, and did not interpret this finding to disqualify Plaintiff from light work as defined in agency regulations. (*Id*. at 940.) As the agency medical consultants are experts in evaluating disability claims, the ALJ was entitled to rely on their conclusions where those conclusions accorded with other medical opinions in the record. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012). Here, the conclusions of the agency medical consultants are consistent with the other medical opinions in the record. Plaintiff insists that the ALJ's omission of any limitations on walking or standing is necessarily "contradictory" to Dr. Hawkins' findings regarding Plaintiff's "inability" to stand. (Pl.'s Resp., Dkt. # 32, at 2-3.) Dr. Hawkins, however, had noted only "some difficulty" in "prolonged" standing or walking, not an "inability," and Plaintiff offers no basis on which the Court could conclude that such a finding is necessarily inconsistent with the full range of light work subject to the limitations noted by the ALJ. The definition of light work in the agency regulations – which the ALJ referenced in his opinion – includes that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ concluded that this category of work was consistent with Plaintiff's limitations, and substantial evidence in the record supported this conclusion.

In making his RFC determination, the ALJ accurately and exhaustively summarized all of the medical records before him. (AR at 59-61.) He explained why he found the work hardening program evaluation concluding that Plaintiff could do light work to be more reliable than the earlier functional capacity evaluation limiting Plaintiff to sedentary work. (*Id*. at 62-63.) He noted Dr. Gireesan's conclusion that Plaintiff was a suitable candidate for light work, and explained why he rejected Dr. Roy's contrary evaluation. (*Id*. at 62-63.) He noted the evidence of Plaintiff's daily activities and explained how they appeared to be consistent with an ability to do light work. (*Id*. at 62.) Finally, as discussed above, he noted that he was relying on the findings of the state agency medical consultants, which explicitly incorporated Dr. Hawkins' findings and concluded that Plaintiff was able to perform light work that included standing, walking, or sitting for about 6 hours in an 8-hour workday. (*Id*. at 63.)

In short, substantial evidence supports the ALJ's conclusion that despite Plaintiff's limitations as recognized by Dr. Hawkins he was capable of light work, and the ALJ did not err by failing to include more stringent standing or walking limitations in his RFC findings.

*Deficiencies in assessing Plaintiff's credibility*

Plaintiff also contends that the ALJ erroneously discredited his testimony about the severity of his pain and the extent of his limitations. When assessing the credibility of a claimant, the ALJ must consider whether there is "an objective medical basis which supports the degree of severity of subjective complaints alleged" as well as the claimant's "daily activities," "the

duration, frequency, and intensity of pain," "the precipitating and aggravating factors," "[the] dosage, effectiveness, and side effects of medication" and his "functional restrictions." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Agency regulations instruct that an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear…the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Regulation 96-7p. Nonetheless, the ALJ is in the best position to judge the credibility of parties and the Court "will not disturb an ALJ's credibility findings unless they are patently wrong." *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002). Plaintiff does not argue that the ALJ failed to explain his reasoning for finding Plaintiff not credible. Rather, Plaintiff takes issue with five particular statements the ALJ made regarding credibility.

First, Plaintiff argues that the ALJ's comment that Plaintiff's complaints were "not fully supported by objective medical evidence and other subjective factors" applied the wrong standard and therefore constituted legal error. (Pl.'s Br. Supp. Reversal, Dkt. # 17, at 10-11.) The standard an ALJ applies to disability determinations is a preponderance of the evidence, see *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996), and Plaintiff contends that the ALJ's comment quoted above applied a higher bar to Plaintiff's testimony by requiring full support. The Court discerns no such error. The ALJ laid out in great detail the clinical findings and Plaintiff's own past representations that were inconsistent with his hearing testimony, and there is simply no indication in the record that the ALJ applied anything other than a preponderance standard or otherwise weighted the scales against Plaintiff. In noting that Plaintiff's subjective complaints were not "fully supported," the ALJ was not reciting an elevated

burden of proof but merely commenting on the degree of consistency between Plaintiff's testimony and other available evidence. Such an evaluation of how well a claimant's subjective testimony matches up with the medical evidence is unquestionably proper, and indeed is the very essence of evaluating the claimant's credibility. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (affirming ALJ's decision, where in making adverse credibility determination "the ALJ properly considered the degree to which the objective medical evidence supported the degree of severity of [the claimant's] subjective complaints"). Plaintiff's objection to the quoted statement "amounts to nothing more than a dislike of the ALJ's phraseology." *Id.*

Plaintiff's second objection similarly amounts to little more than a quibble with the ALJ's choice of language. In making the aforementioned thorough comparison of Plaintiff's complaints with the medical evidence in the record, the ALJ noted that in contrast to Plaintiff's testimony, the clinical findings post-fusion operation were "mostly benign." (AR at 62.) Plaintiff argues that this statement mischaracterizes the actual record, as clinical evaluations performed after Plaintiff's surgery continued to show decreased lumbar range of motion, some muscle weakness, and various levels of difficulty with walking, crouching, making positional changes, and climbing on and off a table. While it is true that the medical records do not demonstrate a complete recovery, the ALJ's comment that clinical findings were "mostly benign" must be considered in the context in which they were made – specifically, as part of a credibility determination. Read in context, it is clear that the ALJ meant to convey *not* that the clinical findings showed no medical problems whatsoever, but rather that they were "mostly benign" in comparison to Plaintiff's subjective complaints. The ALJ noted the specific medical evidence on which he based this statement, including that X-rays and other objective tests showed that the surgery had been a success, that neurological findings had all been normal, and that the record

was largely devoid of evidence that Plaintiff's upper extremities were in any way limited. (*Id*. at 62.) Further bolstering the Court's conclusion that the ALJ did not misunderstand the clinical evidence is the fact that all of the clinical findings Plaintiff now raises to attack the ALJ's summation of "mostly benign" were accurately noted elsewhere in the ALJ's written decision. Accordingly, the ALJ's conclusion that there was some dissonance between the severity of Plaintiff's subjective complaints and the severity of clinical findings was supported by substantial evidence.

Third, Plaintiff argues that the ALJ erred by basing an adverse credibility determination partly on Plaintiff's testimony about his daily living activities, which the ALJ found inconsistent with his subjective complaints. While an ALJ may properly take into consideration a claimant's ability to perform household activities, such ability should not be given undue weight in deciding whether the claimant is disabled. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time"). In his discussion of credibility, the ALJ noted that Plaintiff's "activities of daily living are not what one would reasonably expect given his allegations of disabling impairments," as Plaintiff reported being able to drive and walk daily, go to the grocery store with his wife, and care for his personal needs independently. (AR at 62.) Based on these statements, the ALJ concluded that Plaintiff's ability to carry out such activities "makes his allegations of an inability to perform all work less credible." (*Id*. at 62.) Plaintiff now argues that this conclusion was reversible error, as the ALJ failed to mention limitations in Plaintiff's daily activities such as being unable to do household chores, having to rest frequently while walking, sitting, or standing, and needing his wife to help him in the bathroom (*Id*. at 162-67).

This argument is unavailing, as the ALJ noted Plaintiff's testimony as to limitations on his daily activities in detail. (*Id*. at 59.) While not all of Plaintiff's claimed limitations to his activities made it into the ALJ's opinion, they didn't need to. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (noting that "a written evaluation of each piece of evidence or testimony is not required"). The particular activities the ALJ discusses in his credibility determination – daily driving, regular walking, and pushing a grocery cart while shopping – are simply those least consistent with Plaintiff's representations of his limitations. Indeed, Plaintiff's testimony as to his daily activities was occasionally self-contradictory, as the ALJ pointed out; Plaintiff, for example, stated that he was unable to wash dishes, make a bed, or do laundry, which the ALJ noted "seems inconsistent with his statement that he is able to handle grocery shopping and laundry." (AR at 59.) Similarly, Plaintiff testified at the hearing that he tried not to drive too much and often let his wife do the shopping, but the ALJ noted other inconsistent testimony in which Plaintiff stated that he was the *only* driver in the house and drove the children to school every day. (*Id*.)

The cases Plaintiff cites as analogous to his do not support reversal of the ALJ's decision. In *Martinez v. Astrue*, the ALJ denied benefits on the grounds that the claimant was "able to maintain a very active lifestyle in the process of caring for her five children," totally ignoring testimony that the three older children plus the claimant's mother actually cared for *her*. 630 F.3d 693, 697 (7th Cir. 2011). Similarly, in *Clifford v. Apfel*, the ALJ made a conclusory finding that the claimant's claims of debilitating pain were not credible based on her minimal daily activities, without articulating any medical evidence inconsistent with her claims or how her activities were supposedly inconsistent with them. 227 F.3d at 872. Here, by contrast, the ALJ did not utterly mischaracterize testimony as to Plaintiff's activities, nor did he completely fail to

articulate why they undermined his complaints; he merely focused on those portions of it inconsistent with Plaintiff's complaints, as this was the testimony most relevant to a credibility determination. Finally, unlike the administrative judge in *Clifford*, the ALJ here made explicit reference to clinical findings that appeared inconsistent with Plaintiff's testimony regarding his daily activities, such as the results of the work-hardening evaluation. (AR at 62.) Accordingly, reversal is not warranted based solely on the ALJ's determination that Plaintiff's daily activities undermined his credibility.

Plaintiff's fourth challenge to the ALJ's credibility determination centers on the ALJ's failure to address side effects of Plaintiff's pain medication when determining whether Plaintiff could work.[2]. The ALJ noted in his written decision that Plaintiff complained of dizziness as a result of his prescription painkillers, but did not discuss the matter in depth. Plaintiff insists that "because the ALJ offered no discussion at all on [Plaintiff's] side effects in the credibility evaluation, the case is in error and should be reversed." (Pl.'s Br. Supp. Reversal, Dkt. # 17, at 14.) While side effects may be relevant to a claimant's ability to work in combination with his or her other symptoms, however, failure to discuss them is not grounds for reversal where other substantial evidence supports the denial of benefits. *See Herron*, 19 F.3d at 335 ("The ALJ is not required to make specific findings concerning the side effects of prescription drugs on the claimant's ability to work."). While Dr. Roy's Physical Functional Capacity Questionnaire notes drowsiness, dizziness, and nausea as side effects of Plaintiff's medication, the ALJ found Dr. Roy's report not credible and Plaintiffs have pointed to no other evidence that Plaintiff ever mentioned side effects to any of his physicians or raised them at the hearing before the ALJ.

---

[2] The Court struggles to understand how the ALJ's failure to discuss Plaintiff's side effects is in any way relevant to Plaintiff's *credibility*, despite this argument appearing in the section of Plaintiff's brief challenging the ALJ's adverse credibility findings. Indeed, given that the ALJ omitted any discussion whatsoever of Plaintiff's side effects from his credibility discussion and never signaled that he disbelieved Plaintiff's statements about dizziness, the Court fails to see the relevance of side effects to credibility in this case.

Given the paucity of any mention of side effects in the record, the ALJ was justified in giving the topic short shrift – particularly so in the credibility section of his decision, where what side effects Plaintiff may have suffered seems wholly irrelevant given that Plaintiff appears never to have argued that dizziness, drowsiness, or nausea were preventing him from working. Moreover, given the multiple grounds the ALJ identified as casting Plaintiff's credibility into question, any failure to somehow factor in the side effects of medication was harmless. *See Rasmussen v. Astrue*, 254 F. App'x 542, 547 (7th Cir. 2007) (affirming denial of benefits where the claimant "presented no evidence of her medication's side effects beyond her own testimony," and noting that "[a]lthough the ALJ could have addressed [the claimant's] drowsiness more comprehensively…the failure to do so is harmless").

Finally, Plaintiff takes issue with the ALJ's characterization of Plaintiff's prescribed drugs Vicodin and Flexeril as "rather mild pain medications" and his conclusion that this "detracted from [Plaintiff's] credibility" regarding his allegations of severe pain. (AR at 62.) An ALJ should not disregard subjective complaints of pain simply because they are more severe than what the medical record supports. *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). Instead, the ALJ must develop the record and elicit information about the severity of the pain and its effects on the applicant. *See Clifford*, 227 F.3d at 871-72. Plaintiff is correct that Plaintiff's medications are perhaps not best described as "mild" drugs. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (referring to "strong drugs such as Vicodin"). Accordingly, the ALJ appears to have mischaracterized the medical evidence when he dismissed as "mild" Plaintiff's pain prescriptions.

Nonetheless, even if referring to Vicodin and Flexeril as "mild" was error, it was harmless in light of the other, valid grounds the ALJ cited for failing to fully credit Plaintiff's

allegations of debilitating pain. The ALJ's ill-advised comment about the prescription painkillers occurred in a longer discussion of Plaintiff's decidedly limited efforts to seek treatment. The ALJ noted that Plaintiff went without treatment from the spring of 2011 to the summer of 2012, a gap that would be puzzling if Plaintiff's allegations of constant, crippling pain were fully accepted. It is permissible for an ALJ to make an adverse credibility determination based on a claimant's failure to seek treatment if the claimant has no good reason for the lapse, though the ALJ should first inquire into the applicant's reason for noncompliance. *See Craft v. Astrue*, 539 F.3d 668, 678-79 (7th Cir. 2008). In this case the ALJ did just that, asking Plaintiff at the hearing to explain why there was a yearlong gap between his last visit to Doctor Gireesan and his first visit to Dr. Roy. (AR at 21-22.) Plaintiff initially claimed there was no such gap, then when pressed with names and dates suggested that it was due to his worker's compensation benefits having expired – though he was reticent about the details. (*Id.*) ("[E]ven though I wanted to see more doctors since I had the problem with Workmen's Compensation, they stopped all my medical treatments for about – you know, for a couple of – for a lot of months.") As the finder of fact, the ALJ was entitled to disbelieve this explanation. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (affirming denial of benefits where adverse credibility finding was based partially on claimant's failure to seek treatment despite alleging terrible pain, which he explained by citing lack of insurance coverage to pay for physical therapy). Moreover, the ALJ noted that Plaintiff appears to have never followed up on Dr. Roy's prescription of physical therapy for Plaintiff's pain in the summer of 2012, further casting doubt on the credibility of his pain allegations. (AR at 62.) In light of this evidence – not to mention the several valid grounds for doubting Plaintiff's credibility reviewed above – the ALJ's mischaracterization of Vicodin and Flexeril as "mild" is harmless error.

In summation, none of Plaintiff's five objections to the ALJ's adverse credibility findings is grounds for remand. The Court defers to the ALJ's assessment of witness credibility as long as the record contains some support for it, and the ALJ's expressed concerns are valid grounds for doubting a claimant's credibility. *See Berger*, 516 F.3d at 546 (upholding adverse credibility determination where, as here: (1) the claimant's subjective complaints were contradicted by a functional capacity evaluation; (2) his daily activities were inconsistent with his claimed limitations; (3) his testimony was deceptive in some particulars; and (4) his claims of severe pain were undermined by his failure to pursue physical therapy or other treatment). Because none of the ALJ's articulated credibility concerns were so divorced from the factual record as to be patently wrong, they do not present grounds for remand.

*Failure to account for Plaintiff's decreased lumbar range of motion*

Plaintiff's final objection concerns the ALJ's conclusion that Plaintiff could engage in light work that required only "occasional stooping." (AR at 58.) Plaintiff argues that this finding fails to adequately consider the clinical evidence of decreased range of motion in Plaintiff's lumbar spine, and that it was a "logical fallacy" to conclude that Plaintiff could stoop at all given that his spinal fusion surgery would have immobilized his lumbar vertebrae.[3] (Pl.'s Resp., Dkt. # 32, at 9.) Based on this purported failure of the ALJ to fully appreciate Plaintiff's limited ability to bend at the waist, Plaintiff argues that remand is necessary.

---

[3] Plaintiff insists that "[t]he ALJ's finding that Plaintiff could repeatedly bend over to stoop for a third of the day is essentially a finding Plaintiff could somehow bend past the metal plate imbedded in, and screwed to, his spine." (Pl.'s Resp., Dkt. # 32, at 9.) There is no indication in the record that an L4-5 fusion necessarily and inevitably reduces lumbar range of motion to the point of rendering the patient incapable of bending at the waist, and as such it was not error for the ALJ to credit evidence that Plaintiff was capable of occasional stooping. Contrary to Plaintiff's argument, in fact, scholarly research suggests that total lumbar range of motion may remain largely unchanged post-surgery in L4-5 fusion patients because increased rigidity of the fusion site is offset by increased range of motion contribution by adjacent non-fused vertebrae. *See* Auerbach et al., *Segmental contribution toward total lumbar range of motion in disc replacement and fusions: a comparison of operative and adjacent levels*, 34 SPINE 2510 (2009).

The ALJ did not ignore evidence of Plaintiff's limited range of motion completely; he twice mentioned that medical evidence indicated Plaintiff's lumbar range of motion was reduced. (AR at 60-61.) Plaintiff correctly notes that there was evidence of significant limitation in the record; Dr. Carlton's evaluation in November 2011 showed 25 out of the normal 60 degrees range of true lumbar flexion without hip flexion, 40 out of 90 degrees of full lumbar flexion including hip flexion, 10 out of 25 degrees of extension, and 20 out of 25 degrees of bilateral lateral bending. (*Id*. at 994.) Dr. Hawkins' examination, however, revealed much closer to full range of motion, finding that Plaintiff retained 50 out of the normal 60 degrees range of lumbar flexion without hip flexion, 80 out of 90 degrees of flexion including hip flexion, 15 out of 25 degrees of extension, and 15 out of 25 degrees of lateral bending on both sides. (*Id*. at 918.) The ALJ reviewed and gave substantial weight to both of these examinations, and also credited the findings of the agency medical consultant, Dr. Bilinsky. Dr. Bilinksy noted "slight decrease in ROM [range of motion] of LS [lumbar spine] and normal strength, sensation, and reflexes" and went on to conclude that Plaintiff was limited to occasionally stooping. (*Id*. at 936.) The ALJ relied on the agency medical consultants and approved Dr. Bilinsky's RFC findings. In so doing, he implicitly accepted Dr. Hawkins' findings; contrary to Plaintiff's insistence that a lumbar fusion operation renders a patient physically incapable of bending, Dr. Hawkins' evaluation that Plaintiff could bend 80 degrees – relative to 90 degrees for an uninjured person – is perfectly consistent with an ability to occasionally stoop.

It was error, however, for the ALJ to accept that Plaintiff was capable of occasional stooping without noting contradictory evidence in the record. While an ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss evidence that contradicts the Commissioner's position. *See Green v. Shalala*, 51 F.3d 96, 101 (7th Cir.

1995). Although Dr. Hawkins' and Dr. Bilinsky's conclusions were consistent with the ability to stoop, Dr. Carlton's estimate of Plaintiff's full lumbar flexion range as only 40 out of 90 degrees was arguably to the contrary. Benefit denials have been remanded where ALJs found that claimants could occasionally stoop despite range of motion limitations similar to those found by Dr. Carlton. *See, e.g.*, *Thomas v. Colvin*, 534 Fed. App'x. 546, 551 (7th Cir. 2013) (reversing ALJ's finding that claimant could stoop for up to one third of a workday, where examination found the claimant had only 50 degrees of lumbar flexion and was unable to squat); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (vacating and remanding ALJ's decision that a claimant could stoop occasionally, because the ALJ failed to address a medical evaluation which found that the claimant had only 40 out of 90 degrees range of lumbar motion). Confronted with the conflicting reports of Dr. Hawkins and Dr. Carlton, the ALJ had an obligation to recognize and resolve this conflict.

The Court finds this error harmless, however, in light of the wealth of other substantial evidence supporting the ALJ's RFC findings. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error analysis to claim for disability benefits). As noted above, Dr. Hawkins and Dr. Bilinsky did not find Plaintiff's lumbar range of motion so decreased that it would prevent occasional stooping. This conclusion was also supported by the objective diagnostic evidence, as X-rays found that the fusion surgery was successful, and by Plaintiff's testimony regarding his ability to handle tasks such as grocery shopping and laundry. Plaintiff's work hardening program also found him capable of light (and on some weeks, light/medium) work, and Dr. Gireesan opined after roughly one year of treatment that Plaintiff was a candidate for light work training. Unlike the ALJ decisions reversed in *Golembiewski* and *Thomas*, the ALJ's decision was well supported apart from his omission to confront a conflict in the range of

motion evidence; in both of those cases, the appellate court noted a litany of other errors requiring remand. *See Thomas*, 534 Fed. App'x. at 550-52 (ALJ failed to address that claimant could only stand and walk with a cane, gave "nonsensical" reasons for finding claimant's statements not credible, and failed to resolve discrepancies between the agency consultant report and the medical report on which it was based); *Golembiewski*, 322 F.3d at 915-18 (ALJ offered no reason for finding claimant not credible, mischaracterized the medical evidence, and completely failed to discuss several of claimant's symptoms). Finally, the Seventh Circuit has made clear that even a complete inability to stoop does not necessarily require a finding of disability. *See Lauer v. Apfel*, 169 F.3d 489, 493 (7th Cir. 1999).

Because substantial evidence supports the ALJ's finding Plaintiff capable of light work despite his failure to adequately address the evidentiary conflict regarding Plaintiff's lumbar range of motion, that failure was harmless error and does not constitute a basis for remand.


**Conclusion**

For the reasons set forth above, the Court grants Defendant's Motion for Summary Judgment [25] and affirms the decision of Commissioner denying Plaintiff benefits. Civil case terminated.


**Date**: June 10, 2015

_____
**Ronald A. Guzmán**
**United States District Judge**